IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| FIRECLEAN, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:16-cv-293-TSE-JFA |
| GEORGE FENNELL and STEEL SHIELD TECHNOLOGIES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO QUASH DEFENDANTS' SUBPOENA DUCES TECUM TO SUPPLIER R.D.[1]**

**INTRODUCTION**

When Plaintiff asked Defendants to withdraw the subpoena to R.D. just six days after it was issued, Defendants' response was: "The [identity of the supplier] was disclosed by you in response to our request for production of documents.  We contend that the disclosure constitutes a waiver and therefore will not agree to withdraw our subpoena.  (Exhibit 1).  The next day Plaintiff sent Defendants an email outlining the reasons it believed no waiver had occurred under the Federal Rules and the parties' joint protective order.  (Exhibit 2).  Plaintiff received no further communication from Defendants on this topic and therefore filed this Motion.  All of the after-the-fact justifications that Defendants throw up in their Opposition are nothing more than pretext for having engaged in prohibited discovery.

---

[1] In order to avoid the risk of over sealing it pleadings, Plaintiff's Motion, Memorandum in Support, and Reply briefs refer to the target of Defendants' subpoena *duces tecum* simply as "Supplier R.D" or "R.D."  The exhibits to Plaintiff's reply brief have been accordingly redacted only to conceal the name of this supplier.

1

Rule 45 provides fourteen days to object to a subpoena unless the time for compliance is earlier. The subpoena to R.D. was served on or after November 3 and required compliance by November 18. Plaintiff's objections were made on November 9—within the time allowed under the rules. R.D. produced documents on November 10, after Plaintiff's objections were made. Because the subpoena to R.D. does not seek any information relevant to this case that has not already been designated trade secret, it is improper and cannot be modified but must be quashed in its entirety. Defendants' treatment of this issue demonstrates bad-faith disregard for the Court's discovery orders and Rule 45's procedures for objecting to discovery requests.

## ARGUMENT

**1.   Defendants should be sanctioned for violating this Court's September 2 and September 23 discovery orders regarding FireClean's raw materials.**

Defendants agree with Plaintiff that "[o]n September 2, 2016, this Court ruled that the FIREClean formula would be protected from discovery as trade secret," and that the names of raw material suppliers redacted from Plaintiff's credit card statements are "protected from disclosure per the Court's order." (Defs.' Oppo., 1-2). Plaintiff furthermore agrees with Defendants that information obtained from a document designated highly confidential may nonetheless be used in the course of discovery without improperly sharing the designated document.

Plaintiff's argument is not that the subpoena to R.D. for trade secret information violates the parties' protective order but that it violates this Court's two prior rulings as to discovery of information relevant to Plaintiff's formulation. Regardless of the source of the information, the Court has ruled that Defendants may not seek, by subpoena or other discovery instrument, FireClean's formula because it is protected from discovery as a trade secret. There is no other

purpose for the subpoena to R.D. and therefore this subpoena violates this Court's discovery orders and must be quashed.

Defendants were aware that R.D. was a supplier of raw materials when they issued the subpoena. Indeed, they did not issue subpoenas to Walmart, Sears, Home Depot, and Uline, suppliers of non-raw materials included on Plaintiff's credit card statements, after purportedly "look[ing] into these companies' dealings with Plaintiff in the course of discovery." (*see* Defs.' Oppo., 2, 5). Defendants do not say what constitutes "looking into these companies." Defendants argue that "[i]t was conceivable that Plaintiff purchased equipment from Restaurant Depot for the mixing and bottling process." (*Id.* at 6). The same could be said for Walmart, Sears, Home Depot, and Uline, however Defendants did not serve subpoenas on these entities. Indeed, subpoenas for all purchase order and receipts for equipment used to bottle and mix FireClean would not be relevant or proper discovery. FireClean's credit card statements reveal less than $200 worth of purchases from R.D. yet Defendants chose to issue a subpoena to this supplier and none of the others. Defendants only reason for seeking this information was to discover FireClean's trade secret formula.

**2.    Defendants should have withdrawn the subpoena to R.D. once they learned of FireClean's inadvertent disclosure.**

Taking Defendants at their word, if they did not know that R.D. was a provider of raw materials when they served the subpoena (*see* Defs.' Oppo., at 5), once Plaintiff informed them that the subpoena sought trade secret information they were under a duty to limit the subpoena to avoid such production (as they did with FireClean's accountant) or otherwise withdraw the subpoena.

FireClean inadvertently disclosed the identity of this supplier on its credit card statement. Defendants contend the disclosures was not inadvertent stating "Plaintiff now wishes to claim

3

the disclosure of Restaurant Depot's name was inadvertent after Plaintiff consciously made handwritten notations on credit card statements produced in discovery." (Defs.' Oppo. at 7). Had Defendants attempted to discuss its concern with Plaintiff before unilaterally declaring waiver of privilege, Defendants would have learned that the handwritten notations were made when the statement were first received by FireClean from the bank in order to determine which account to charge. On the other hand, the redactions were made just prior to production, in this instance a full one to three years after the statement was first received. The fact that two entries were overlooked amongst thousands of lines of text within hundreds of pages of statements is understandable human error. Defendants should not be permitted to use this inadvertent disclosure against FireClean, especially in light of Plaintiff's quick and clear protestations once it was informed of its mistake.

### 3. Plaintiff did not delay in objecting to the subpoena six days after issuance.

Six days is an appropriate amount of time within which to lodge objections to a discovery request or subpoena. For example, the subpoena to FireClean's accountant was issued October 17 and the letter to the accountant limiting the scope of the subpoena was not written until October 31 (Defs.' Oppo., Exhibit 11). The parties met and conferred over Plaintiff's claim of trade secret protection on October 21, four days after the subpoena was issued. (Pl.'s Mem. Supp., Exhibit 1). Defendants do not explain why four days would be an appropriate period of time within which to raise the issue of trade secret protection but six days is not.[2] As discussed above, Rule 45 permits objections to be served before the earlier of the time specified for compliance or 14 days after the subpoena is served therefore Plaintiff's objection was timely

---

[2] Especially where Defendants are aware that one of the lead counsel responsible for this case was out of town for a week beginning on the day the subpoena was served and considering the intensive motions practice involved in the last month of this case.

under the federal rules. There is no requirement that objections be lodged *prior* to notice or service of the subpoena. For example, Rule 45(a)(4) requires notice to all parties prior to serving a subpoena to enable the party to object or to serve a subpoena for additional materials after they receive notice. (2013 Committee Notes to Rule 45). Therefore, Plaintiff took reasonable steps to rectify its disclosures and object to the discovery request within a timely fashion. *See* 2006 Notes to Fed. R. Civ. P. 45 at para. 4 (noting procedure for asserting the privilege or protection after disclosures under Rule 45(e)(2)(B) mirrors that of Rule 26(b)(5)(B)).

**4.     Defendants' other arguments are unsupported and only serve to distract from the issues presently before the Court.**

Regarding Defendants' contention that Plaintiff has made misrepresentations in its Complaint, Plaintiff's position is that FireClean is not repackaged Crisco. Plaintiff never stated that any ingredient could not be commercially procured. Further, an in camera review of the receipts produced by R.D. would not prove that FireClean is Crisco or otherwise a re-labeled or re-packaged pre-existing consumer or retail product even if it were true.

In addition, Plaintiff did not raise Defendants' subpoena to its accountant in an attempt to insinuate it was improper. Defendants agreed to limit that subpoena to avoid trade secret information. Plaintiff requested similar courtesy here and was refused necessitating this Motion. There is no reason why Defendants should not similarly limit its subpoena to R.D, which in this case would require withdrawal of the subpoena in its entirety.

Dated:  November 17, 2016 

Respectfully submitted,
FIRECLEAN LLC

By:     /s/
Bernard J. DiMuro, Esq. (VSB No. 18784)
Stacey Rose Harris, Esq. (VSB No. 65887)
**DIMUROGINSBERG, P.C.**
*Counsel for Plaintiff FireClean LLC*
1101 King Street, Suite 610
Alexandria, Virginia  22314-2956
Tel: (703) 684-4333
Fax: (703) 548-3181
Emails: bdimuro@dimuro.com
        sharris@dimuro.com

### CERTIFICATE OF SERVICE

    I hereby certify that on the 17th day of November, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel of record that are registered with CM/ECF.

/s/
Stacey Rose Harris, Esq. (VSB No. 65887)