**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| **FIRECLEAN, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  1:16-cv-293-TSE/JFA** |
| | ) | |
| **GEORGE FENNELL,** *et al.* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE DAVID SUGG AND EDWARD SUGG
FROM TESTIFYING AS EXPERT WITNESSES AT TRIAL; TO EXCLUDE TRIAL
TESTIMONY OF PLAINTIFF'S EXPERT ANGELINE B. CARDIS, PH.D. AND TO
EXCLUDE TRIAL TESTIMONY OF PLAINTIFF'S FINANCIAL EXPERT COLIN A.
LINSLEY, PH.D.; AND TO EXCLUDE  ALL EXHIBITS THAT REFER TO TESTING
<u>NOT AGREED TO BY THE PARTIES</u>**

COME NOW the Defendants, George Fennell and Steel Shield Technologies, Inc. (hereinafter "Defendants"), by and through counsel, Helen Neighbors and the law firm of Franklin & Prokopik, P.C., and pursuant to the Federal Rule of Civil Procedure hereby move this Court to exclude David Sugg and Edward Sugg from testifying as expert witnesses at trial;  to exclude trial testimony of Plaintiff's Expert Angeline B. Cardis, Ph.D. and to exclude trial testimony of  Plaintiff's Financial Expert Colin a. Linsley, Ph.D.; and to exclude  all exhibits that refer to testing not agreed to by the parties.  In support thereof, Defendants respectfully state as follows:

<u>**BACKGROUND**</u>

This is an action for false advertising and defamation allegedly arising out of statements made by Defendant George Fennell ("Mr. Fennell") on his personal Facebook page and a reposting of a demonstration video on Weapon Shield's business Facebook page.  Plaintiff

asserts that Mr. Fennell made statements about the "nature, characteristics, and qualities" of Plaintiff's product, FIREClean (a firearm lubricant) that are allegedly false and defamatory. The case is set for a five-day jury trial beginning on March 7, 2017.

## APPLICABLE LAW

### A.  Expert Witnesses

The Federal Rules of Evidence codify the court's gatekeeping function with respect to the admissibility of expert witness testimony.   Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The rule provides a framework for the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

The Rule 702 criteria apply not only to scientific testimony, but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  "The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10).  The decision of whether to admit or exclude the testimony of an expert witness is within the inherent discretion of the court. *U.S. v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995).

### B.  Speculative Expert Testimony.

The Federal Rules of Evidence allow for expert testimony at trial if the testimony will help the trier of fact understand the evidence, is based on sufficient data, is the product of

reliable methods, and the expert has reliably applied those methods to the case at hand.  Fed. R.

Evid. 702.   Federal Rule of Evidence 703 further describes the proper basis of an expert's

opinion:

> An expert may base an opinion on facts or data in the case that the expert has been made
> aware of or personally observed. If experts in the particular field would reasonably rely
> on those kinds of facts or data in forming an opinion on the subject, they need not be
> admissible for the opinion to be admitted. But if the facts or data would otherwise be
> inadmissible, the proponent of the opinion may disclose them to the jury only if their
> probative value in helping the jury evaluate the opinion substantially outweighs their
> prejudicial effect.Fed. R. Evid. 703.

Thus, the basis of an expert's opinion must be the facts or data that other experts in the

field would reasonably rely upon in forming an opinion.  However, an expert's opinion may not

be based on speculation or conjecture.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A

court may conclude that there is simply too great an analytical gap between the data and the

opinion proffered.").   See also *Dash v. Mayweather*, 731 F.3d 303, 325 (4th Cir. 2013)

(calculation of damages too speculative to support actual claim); *Pharmanetics, Inc. v. Aventis

Pharmaceuticals, Inc.*, 182 Fed. Appx. 267, 271 (4th Cir. 2006) (expert's calculation of damages

properly excluded as too speculative).

Like federal law, Virginia law also looks upon speculative evidence with disfavor,

particularly speculation with regard to the amount of damages.  Under Virginia law, the plaintiff

must prove the element of damages "with reasonable certainty."  *Sunrise Continuing Care, LLC

v. Wright,* 277 Va. 148, 154 (2009). "Damages that are contingent, speculative, and uncertain are

not recoverable because they cannot be established with reasonable certainty."  *Id.*   This

principle gives rise to the "new business rule" in Virginia case law, which holds that profits from

a new business are generally not recoverable "because new businesses are speculative: a new

business relies on unestablished variables such as future bargains, market status, and other

contingencies that do not allow the Court to fix the measure of damages." *Vienna Metro LLC v. Pulte Home Corp.,* 786 F. Supp. 2d 1076, 1086 (E.D. Va. 2011) (citing *Mullen v. Brantley*, 213 Va. 765 (1973)).

### C. Stipulation

A stipulation "by definition, constitutes '[a]n express waiver made . . . preparatory to trial by the party or his attorney conceding for the purposes of trial the truth of some alleged fact . . . .'" Vander Linden v. Hodges, 193 F.3d 268, 279 (4th Cir. 1999) (quoting 9 Wigmore, Evidence § 2588, at 821 (Chadburn 1981)). "The primary purpose of entering into a stipulation is 'to dispense with proof over matters not in issue, thereby promoting judicial economy at the convenience of the parties.'" U.S. v. Lentz, 419 F. Supp. 2d 843, 844 (E.D. Va. 2006) (quoting U.S. v. Montgomery, 620 F.2d 753, 757 (10th Cir. 1980)). Stipulations of fact are generally binding upon the court, but legal stipulations are not. Stancil v. U.S., 200 F.Supp. 36, 43 (E.D. Va. 1961).

## ARGUMENT

### I.    David and Edward Sugg do not meet the requirements of Rule 702

Plaintiff is a limited liability company comprised of two members, David Sugg and Edward Sugg (collectively "Suggs"). Plaintiff has designated both David Sugg and Edward Sugg as expert witnesses it intends to call at trial. According to the expert disclosures required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, David Sugg "is a recreational shooter who has shot thousands of rounds using firearms that have FIREClean applied to the proper internal components." Exhibit 1. Edward Sugg "has been a competitive shooter in military competitions . . . and recreationally" who has shot "thousands of rounds using firearms that have FIREClean applied to the proper internal components." Exhibit 2. The Suggs may be offered to testify to

refute allegations as to the propensity of FIREClean to gum in a bottle or on a weapon, the propensity of FIREClean to cause weapon malfunction, and the danger posed by FIREClean to users and their firearms.  Exhibits 1&2.

Plaintiff has designated David and Edward Sugg as experts on its product, FIREClean. Applying the factors of Rule 702 to the Suggs' prospective testimony, it is clear they do not meet the requirements for admissibility as expert witnesses.  The knowledge they possess will not help the trier of fact, is not based on sufficient facts or data, is not the product of reliable principles and methods, and they have not reliably applied any principles and methods to facts in the case. The Suggs are, at best, lay witnesses on the topic of the efficacy of FIREClean.

Plaintiff may argue that as the creators of FIREClean and sole owners of the business, the Suggs are uniquely qualified to testify about the propensities associated with the product. However, "a witness does not become an expert simply by testifying about 'the particularized knowledge that the witness has by virtue of his or her position in the business.'"  *Morin v. State Farm Fire & Cas. Co.*, 453 F. Supp. 2d 173, 175 (D. Me. 2006) (citing Fed. R. Evid. 701 advisory committee notes) (prohibiting witness from testifying as expert to the facts he observed while investigating a fire).  The Suggs are not qualified as expert witnesses merely by virtue of their position as inventors and LLC members.

Additionally, the Suggs do not have sufficient education in chemistry to be experts in the chemical propensities of FIREClean.  Edward Sugg testified at his deposition that the extent of his post-high school science education was two or three quarters of general chemistry during his time as an undergraduate at Virginia Tech.  (Exhibit 3, Transcript of Deposition of Edward Sugg, Vol. I, 199:15-201:6).  The extent of David Sugg's education and research regarding tribology was "cursory internet searches" and the purchase of a book on Amazon which, in his words,

"was skimmed over and handed off to Ed pretty quickly."  (Exhibit 3, Transcript of Deposition of David Sugg, Vol. I, 90:10-16 and 89:17-90:5).

### a.  Suggs' knowledge will not help trier of fact.

The testimony the Suggs intend to offer as expert witnesses will not help the trier of fact resolve the facts at issue in this case.  "Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."  *Daubert*, 509 U.S. at 593.  The Suggs' testimony on the propensity of FIREClean to gum or cause weapon malfunction will be purely the result of observation through personal experience.

As explained below, the Suggs will not be able to demonstrate the use of any theory, method, or data that will be useful to the Court beyond what they could offer as lay witnesses who have personal experience with FIREClean.  Additionally, the Suggs have no specialized knowledge that would inform an expert opinion as to the danger posed by FIREClean to users and their firearms.  They are not qualified in the field of risk assessment and can only speak on the topic from personal experience.

In contrast, both parties have employed expert witnesses with more qualifications to testify at trial.  These experts have quantifiable knowledge in the field of chemistry, and conducted peer-reviewed tests on FIREClean and other samples provided to them in the course of litigation.  The admission of the Suggs as expert witnesses in addition to the other experts designated in the case would not assist the trier of fact in any way.

### b.  Suggs' testimony not based on sufficient facts or data.

The Suggs' prospective testimony is also not based on sufficient facts or data.  The Rule 26(a)(2)(C) disclosure states that David Sugg and Edward Sugg have shot "thousands of rounds

using firearms that have FIREClean applied to the proper internal components." However, the Suggs do not have sufficient, quantifiable data on which to base their opinions as experts. In fact, they stated in their depositions that the only written records of testing kept on FIREClean consisted of notations on the bottles which were destroyed as testing progressed. (Exhibit 3, Depo. E. Sugg V.1 Pg. 249 Ln. 14- Pg. 252 Ln. 4)    Therefore, by their own admission, Plaintiff's did not keep any records at all. There are no records upon which they will rely to testify as to FIREClean's propensity to gum in the bottle or on a weapon, let alone the propensity to cause weapon malfunction. Any experience they have with FIREClean's propensities for certain characteristics is purely through personal experience that is more indicative of lay witness testimony rather than expert testimony.

### c.  Suggs' testimony is not the product of reliable principles and methods.

Thirdly, the Suggs' testimony is not the product of reliable principles and methods designed to test the propensity of FIREClean for certain characteristics. The Suggs have espoused no particular theory or technique that they employed in shooting "thousands of rounds" using FIREClean. Indeed, the Suggs testified at deposition that they did not even apply a discernable testing method with documented results when developing the formula for FIREClean (Exhibit 3, Depo. D. Sugg V. 1 Pg. 68 Ln 1-7; Pg. 69 Ln 19–Pg. 71 Ln.22; Pg. 72 Ln. 1-7; Pg. Pg. 60 Ln 21- Pg. 61 Ln. 18) (Exhibit 3, Depo. E. Sugg V.1 Pg. 249 Ln. 14- Pg 252 Ln. 4; Pg. 268 Ln 21- 272 Ln. 22.)  Their method of determining whether a particular formulation was effective in preventing carbon fouling was by "looking at it." (Exhibit 3, Depo. D. Sugg V. 1 Pg. 69 Ln 13-18; Pg. 60 Ln 21- Pg. 61 Ln. 18.) (Exhibit 3, Depo. E. Sugg V1 Pg. 268 Ln 21-Pg. 272 Ln. 22.) They did not take any measurements or write down any information or impressions

about what they saw.  Under no circumstances do these actions qualify as "reliable principles and methods" as required by Rule 702.

In addition, none of the Suggs' so-called "testing" or experience using FIREClean can be said to directly address the issue of the danger posed by FIREClean to users and their firearms. They have not claimed to have performed any type of peer-reviewed safety testing on guns treated with FIREClean.  At best, the Suggs will be able to testify that based on their personal experience, they have seen no danger posed by FIREClean.  However, personal experience is not sufficient to qualify an individual to be an expert witness.  Such an assertion must be the result of reliable principles and methods, reliably applied to sufficient facts and data in the case.

### d. Suggs' have not reliably applied the principles and methods to the facts of the case.

Finally, as indicated in the above subsections, the Suggs have not reliably applied reliable principles and methods to the facts of the case as required of experts under Federal Rule 702. The Suggs have not developed any principles and methods to evaluate FIREClean's propensity to gum, cause weapon malfunction, or the danger it may pose to users.  Thus, it is impossible for them to have applied any principles or methods in a reliable way.

### II. Plaintiff's Expert Angeline B. Cardis should be excluded for using test results which were not part of the stipulation and for failing to meet the requirements of Fed. R. Evid. 702.

The Plaintiff commissioned testing of its product and various other products, between September 2015 and November 2015, and again during January 2016, at PetroLube prior to instituting this litigation.  PetroLube did not retain the samples for Defendants to conduct their own testing.  The testing commissioned prior to the filing of the complaint in this case, and on which the claims in the original complaint relied, was later removed in Plaintiff's First Amended Complaint (Dkt. 295).

In September and October of 2016, Plaintiff once again employed PetroLube to conduct testing on certain samples necessary for the claims and defenses in this case. PetroLube analyzed Weapon Shield sample #57, and various composite samples comprised of FIREClean samples #3, 4, 10, 12, 41, 44, 43, 47, 48, 49, and 51. These test results were provided to Plaintiff in a report dated October 14, 2016.

Because of the way in which the original PetroLube samples and other samples were handled, Defendants filed a motion to dismiss due to spoliation of evidence. In the hearing before this Court on November 17, 2016, the parties were instructed to resolve the spoliation issue by coming to an agreement regarding the use of samples in this case going forward.

As a result, on November 30, 2016, the parties submitted an agreement to the Court titled, "Stipulation Regarding Handling of FireClean Samples," which was adopted by the Court on the same day (Exhibit 4). In the stipulation, the parties agreed that each would be allowed to rely on FIREClean samples 63, 64, 65, 68, 69, NMR 002, and Defendants' test results conducted upon the samples procured by the Defendants. The samples tested by PetroLube and the corresponding results were not part of the agreed stipulation and therefore were not intended to be included in the list of samples and tests upon which the parties and their experts could rely. Nonetheless, Dr. Cardis relies on PetroLube-tested samples from September and October 2016 to form the basis of the opinion expressed in sections XI, XII, and XIII of her expert report, and presumably her anticipated trial testimony (Exhibit 5).

### A.    Opinions contained in the Cardis report premised upon testing which was not included in the parties stipulation should be excluded.

The stipulated agreement regarding the use of testing samples in this case is the result of intense discussion and disagreement about the appropriate manner in which to handle physical evidence. The stipulation was intended to encompass the whole universe of acceptable test

samples.  Any sample not listed in the stipulation was not intended for use at trial.  Per the terms of the stipulation, neither party nor their experts can rely on the PetroLube test results to prove their theory of the case because they were not included in the stipulation.

Dr. Cardis relies on PetroLube-tested samples from September and October 2016 to form the basis of the opinion expressed in sections XI (test run was on samples which were not included in the stipulation- actual test run was ASTM D2266 for grease), XII (test run was on samples which were not included in the stipulation), and XIII (test run was on samples which were not included in the stipulation) of her expert report.  Her reliance is misplaced because these samples were not included in the stipulation and thus were not intended for use at trial.  In light of the parties' stipulation and the Court's adoption of it, Dr. Cardis cannot reasonably rely on the PetroLube samples as the basis of her expert opinions.  Her testimony on the topic should therefore be excluded.

Plaintiff may argue that the stipulation does not apply to the September/October 2016 PetroLube samples because the chain of custody forms attached as an Annex to Dr. Cardis' report indicate that Defendants' expert accepted delivery of them and thus had an opportunity to examine and test them.  However, the stipulation was signed after Defendants' expert received the samples in question.  Thus, the parties had knowledge of the PetroLube samples and still chose not to include them in the stipulation.  The agreement memorialized in the November 30 stipulation is the controlling agreement between the parties.  It does not include the PetroLube samples and therefore neither party should be permitted to rely on them at trial.

**B.  Opinions in the Cardis report without scientific foundation should be excluded.**

The primary disqualifying factor in Dr. Cardis' report is the fact that she did not conduct any scientific tests of her own on which to base her conclusions.  Rather, she reviewed materials

produced in this case, including the Demonstration Video, and testing done by PetroLube, which is excludable for the reasons stated above.  Expert testimony that relies on the analysis of tests that the expert did not conduct herself is inadmissible because it is lacking in factual foundation. *Tittsworth v. Robinson*, 252 Va. 151, 263 (1996) (holding opinion of expert who did not examine the vehicles involved, but rather relied on photographs to determine damage, was too speculative and thus inadmissible).

In Opinion I, Dr. Cardis opines that the Falex Lubricity Tester Mr. Fennell utilized is not a scientific testing device.  First, Mr. Fennell never described it as such.  Second, Dr. Cardis never physically inspected or used the Falex machine that Mr. Fennell used.  Defendants offered Plaintiff access to the tester, but it later declined the offer.  Dr. Cardis' opinion on the machine, based on nothing more than her observation of a YouTube video, is too speculative to be admissible as expert testimony.

Opinion II of Dr. Cardis' report states that there is no way to accurately reproduce Mr. Fennell's test from the Demonstration Video because he did not use an oil cup to measure the amount of product for each test.  However, the use of an oil cup is not required for demonstrative machines such as the Falex machine in the Demonstration Video.  Dr. Cardis' opinion on this point is not based on science and should be excluded.

Opinions III and IV are, once again, conclusory statements not based on scientific evidence.  In Opinion V, Dr. Cardis improperly cites to the ASTM D4172 test, which was never run on the stipulated samples in this case by Plaintiff.  Moreover, the test that was conducted, the ASTM D2266 (grease four ball wear test), was the wrong test to measure these products which are liquids.  The more appropriate test would have been the ASTM D 4172 which is the liquid four ball wear test.  In any event Dr. Cardis did not run these tests and thus cannot opine on their

results without examination of the test samples.  As Defendants' expert Dr. Schmidt will testify, "examination of the test samples before and after testing is essential to the interpretation of the tests performed and the results derived."  Expert Report of Frederick E. Schmidt at 11 (Exhibit 6, Report only, Appendices were omitted due to volume).  Thus, Opinions III, IV, and V should be excluded.

Additionally, Dr. Cardis cites no scientific basis for her conclusions in Opinion VI.  She opines that "hardness and roughness of the surface could impact the results" of a Timken OK Load test and the fact that Mr. Fennell did not identify the metallurgy of the roller used in the test is problematic.  However, Dr. Cardis does not give the basis for this opinion.  Conspicuously missing from her report is any explanation of what experience, testing or scientific correlation supports her claims.  Dr. Cardis also fails to cite any scientific support for her opinions in VIII and IX.  In fact, Opinions VIII and IX are topics on which it is unnecessary for an expert to testify as it will not assist the trier of fact.  As such, Opinions VI, VIII, and IX lack proper scientific basis and should be excluded.

### III.    Plaintiff's Expert Colin A. Linsley should be excluded as his opinions are speculative.

In order to prove its damages, Plaintiff has designated Colin A. Linsley, Ph.D. ("Dr. Linsley") as its expert witness on lost profit damages (Exhibit 7).  Per Dr. Linsley's report, he intends to opine at trial about Plaintiff's lost profits from June 2015 onwards.  Dr. Linsley's report projects Plaintiff's losses out to 2022, seven years after the alleged unlawful activity and double the amount of time Plaintiff had been in business as of June 2015.

### a.  Lost Profits as calculated by Dr. Linsley are too speculative to be admissible.

Dr. Linsley's future profit projections for Plaintiff's business are unreasonably optimistic. They assume a constant rate of growth for the seven years following 2015.  However, as

Defendants' expert David R. Elmore, Jr. ("Mr. Elmore") opines, Dr. Linsley does not take into account the leveling off of growth that naturally occurs as a business matures and becomes established in its industry (Exhibit 8).  Mr. Elmore demonstrates a more appropriate and realistic growth curve for Plaintiff in his report, which shows the rate of growth slow to a smaller but steady rate.

As explained below, Dr. Linsley relies on Plaintiff's short financial history to form his opinions, which makes them all the more speculative.  Plaintiff had less than three years of business experience when the allegedly defamatory acts occurred.  Dr. Linsley then takes the three years of history to predict seven years into the future, more than double the amount of time for which Plaintiff existed prior to the acts giving rise to this litigation took place.  Taking such a short period of time and using it to predict far into the future is extremely speculative, as the original time frame is merely a brief snapshot in the life of the company.

Finally, Dr. Linsley's calculations of lost profit damages are too speculative because they do not take into account the similarity in Plaintiff's sales for the summers of 2014 and 2015. Most notably, the sales for June through August 2014 mirror the trend of a dip in sales for June through August 2015, which Mr. Elmore notes in his report.  This trend is still apparent even when one excludes the $25,000 one-time sale to the State Department in June 2014.

**b. The New Business Rule precludes Dr. Linsley's calculation of damages on the Virginia defamation claim.**

In addition to the overall speculative nature of Dr. Linsley's conclusions, Virginia's new business rule precludes the use of Dr. Linsley's testimony on lost profits on the defamation claim in particular.  In Virginia, profits from a new business are generally not recoverable because they are too speculative.  *Vienna Metro LLC*, 786 F. Supp. 2d at 1086.  Plaintiff in this case is a sufficiently new business that any projection of lost profits is too speculative and not reliable.

The difference between calculating lost profit damages for an established business versus a new business is as follows: for an established business with an established earning capacity, prior and subsequent records of the business may be admissible "to permit an intelligent and probable estimate of damages." *Mullen*, 213 Va. at 768.  However, the same rule does not apply to new businesses because the success of a new business "depends upon future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages." *Id.*

The courts have not established a bright-line rule for what constitutes a new business. However, generally a business that has only been in existence for a few months to a few years is considered new.  See, e.g., *Clark v. Scott*, 258 Va. 296, 304 (1999) (holding that a dental partnership that was in operation for eight months did not qualify as established business); *ITT Hartford Group, Inc. v. Virginia Financial Associates, Inc.*, 258 Va. 193, 202 (1999) (holding that two-and-one-half year history of income insufficient to qualify as an established business). Cf. *Maher v. Continental Cas. Co.*, 76 F.3d 535, 541 (4th Cir. 1996) (under West Virginia law, "more exacting proof of lost profits may be required where the business is a relatively new, less-established one.").

In contrast, the court in *PBM Products, Inc. v. Mead Johnson & Co.* found the plaintiff was not a new business because it sold $2.1 million in infant formula in its first year and sales grew at increasing rate in each of the three following years. 174 F. Supp. 2d 424, 428 (4th Cir. 2001).  However, *PBM Products, Inc.* is distinguishable from the case at hand because of its size and affiliation from the outset with a global manufacturer of infant formula.  Plaintiff in this case is a small start-up, comprised of two individuals, that markets its product regionally and is unaffiliated with any larger company.  Additionally, the court in *PBM* noted that the plaintiff's

expert "reasonably calculated its losses" and did not project unlimited growth. *Id.* Rather, the expert project growth until 2005, with a maximum market share of 37%. *Id.* In comparison, Dr. Linsley opines that Plaintiff has "effectively unlimited growth prospects." Given Plaintiff's relative size and the number of competitors in Plaintiff's market, that statement cannot be true.

At the time the allegedly defamatory statements were made, Plaintiff had been in business for less than three years, making it similar to the business in *ITT Hartford Group, Inc.*, which the court found was not an established business for the purposes of calculating damages. With less than three years of sales records prior to June 2015, Plaintiff does not have a sufficiently established business record on which to base its future projections. Moreover, Plaintiff was, and continues to be, a small company in a very large market, unlike the company in *PBM Products, Inc.* Its future profits are dependent on many external factors that cannot be reliably predicted. Plaintiff falls squarely in Virginia's definition of a new business for which lost profits cannot be calculated with certainty. Therefore, any estimation of lost profits, and Dr. Linsley's calculation in particular, is too speculative to be admissible at trial.

### C. Plaintiff's Exhibits which contain testing data excluded by the Court on November 17, 2016 should be excluded from use at trial.

Plaintiff has listed as trial exhibits, documents which rely upon FireClean samples where defendant could not test those same samples due to issues with the samples (See Plaintiff's Exhibit List Dkt. 285). As part of its exhibit list for trial, Plaintiff included exhibits which contained test results which the Defendants were not able to test due to the destruction of samples by Plaintiff's laboratories or due to the fact that the samples at issue were unusable and not part of the stipulation entered into by the parties. Specifically Defendants request that the following Exhibits be excluded from trial:

| Exhibit | Description | Basis |
|---|---|---|
| 2. | 9-28-15 -Testing Report 15091801 | Samples destroyed by Plaintiff lab. |
| 7. | 1-7-15- Testing Report 15122801 | Samples destroyed by Plaintiff lab. |
| 9. | 11-23-15 -Test Report 15110933 | Samples destroyed by Plaintiff lab. |
| 35. | 9/30/16 Ronald Davis Report and Attachments-"Chemical Comparison of FireClean and Vegetable Oil" | Samples destroyed by Plaintiff lab. |
| 36. | 10-27-16-Ronald Davis Report and Attachments-"Chemical Comparison of FireClean and Vegetable Oil" | Samples destroyed by Plaintiff lab. |
| 37. | 10-27-16-Ronald Davis Rebuttal Expert Report  and attachments. | Samples destroyed by Plaintiff lab. |
| 38. | 8-29-16- Ronald Davis Affidavit. | Samples destroyed by Plaintiff lab. |
| 39. | Angeline B. Cardis Report and Attachments. | Samples destroyed by Plaintiff lab. |
| 40. | Angeline B. Cardis Rebuttal Report and Attachments. | Samples destroyed by Plaintiff lab. |
| 57. | Lab testing | Samples destroyed by Plaintiff lab. |
| 127. | Test Results | Samples destroyed by Plaintiff lab. |
| 129. | Declaration by Lisa Povolny | Samples destroyed by Plaintiff lab. |
| 130. | Declaration of David Plank And Attachments. | Samples destroyed by Plaintiff lab. |
| 161 | Chain of Custody Forms | Samples destroyed by Plaintiff lab. |

Since the above referenced Exhibits rely upon test results for FireClean samples where the Defendants could not test those same samples and were not included as part of the stipulation agreed to and entered into by the parties, they should be excluded from the trial of this matter.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request this Honorable Court enter an order excluding David Sugg and Edward Sugg from testifying as expert witnesses at trial; excluding the testimony of Plaintiff Expert Angeline B. Cardis; Excluding the testimony of Plaintiff's Expert Colin A. Linsley and excluding Plaintiff's Exhibits 2,7,9, 35-40, 57, 127, 129-130, and 161.


Dated:  January 24, 2017.                    Respectfully submitted,


                                             /s/_____
                                             Helen D. Neighbors (VSB No. 48607)
                                             FRANKLIN & PROKOPIK, P.C.
                                             2325 Dulles Corner Boulevard
                                             Suite 1150
                                             Herndon, VA 20171
                                             Telephone: (703) 793-1800
                                             Facsimile: (703) 793-0298
                                             hneighbors@fandpnet.com
                                             *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Bernard J. DiMuro, Esq. (VSB No. 18784)
Stacey Rose Harris, Esq. (VSB No. 65887)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, Virginia  22314-2956
Tel: (703) 684-4333
Fax: (703) 548-3181
bdimuro@dimuro.com
sharris@dimuro.com

  /s/_____
      Helen D. Neighbors